IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| CHAD EDWIN SPURGEON | ) | CASE NO. 07-10462 |
| Debtor. | ) | CHAPTER 13 |
| | ) | |

TRUSTEE'S BRIEF IN SUPPORT OF OBJECTION TO CONFIRMATION

COMES NOW, The Standing Chapter 13 Trustee, C. Kenneth Still, (hereinafter referred to as the "Trustee")  by and through his counsel of record, James M . Setters, and files this Brief in Support of Objection to Confirmation of the Chapter 13 Plan of Chad Edwin Spurgeon (herein after referred to as  "Debtor")

BACKGROUND

The Debtor filed for relief under 11 U.S.C.  Chapter 13 on February 2,2007, in the United States Bankruptcy Court for the Eastern District of Tennessee Chattanooga Tennessee and was assigned case number 07-10462. A 341 Meeting of the Creditors was held on March 14, 2007 whereby the Trustee objected to confirmation along with one other creditor.  The Chapter 13 Trustee, objected to the confirmation of the Plan on the grounds that deductions on Form B22C titled "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income", (hereinafter referred to as "Form B22C") includes collateral securing a debt that has been or will be surrendered by the Debtors upon confirmation of the plan, thereby leaving no further

payments to be made on such debt. By doing this the Debtor is not applying all of his projected disposable income in the applicable commitment period of five years to make payments to general unsecured creditors, in contravention of 11 U.S.C. § 1325(b)(1)(B) The Trustee based his objection on the facts below:

## FACTS

In his schedules, the debtor listed under Schedule B line 25 that he owned a 1996 Southern Mobile Home worth $15,000.00. This Mobile Home is owned in addition to his residence. Green Tree holds a perfected security interest is this mobile home and has filed a claim for $25,891.32. In his chapter 13 Plan, the Debtor proposes to make 60 plan payments consisting of a plan payment of $125.00 per week. The Debtor further proposes to surrender this non residential mobile home and pay his general unsecured creditors on a pro rata bases, otherwise known a "remainder plan".

According to the form B22C filed by the debtor, his combined annualized income exceeds the applicable median family income for the state of Tennessee and so the Debtor is required to complete the remaining portion of form B22C. On line 47 of the Debtor's Form B22C, the debtor listed the current monthly payment on the mobile home he intends to surrender in the amount of $341.42. This in turn causes the Debtor's disposal income to be committed to the general unsecured creditor to be figured at $2.65 per month.

Debtors amended schedule I reflects a combined gross income of both husband and wife to be $6983.77 per month and a current net income of $4138.22 per month. Their amended schedule J reflects current expenditures of $3596.42 per month for the debtor and their two dependent children ages 3 and 10, thereby leaving a monthly net

income of $541.80. Amendments were made post 341 meeting. The creditors and the trustee have not had an opportunity to examine the debtors as to the validity of these changes.

Furthermore, the Creditor, Green Tree, filed a motion to Lift the Automatic Stay on the Mobile Home and this Honorable Court sustained said motion over objections of the debtor, on April 5, 2007 and entered the order on April 6, 2007. Debtors objections stemmed from the fact that if the debt is a Domestic Support Obligation he will have to pay for the home losing the right to modify the plan and make provisions for the mobile home.

## ISSUES

The issues in this case are two fold. The first being whether the debtor can surrender secured collateral and still count the monthly payment on line 47 of Form B22C thereby, reducing the disposal income figure on line 58 of Form B22C.

The Second issue is does the phrase "projected disposable income" in 11 U.S.C. § 1325(b)(1)(B) require a debtor to contribute to his unsecured creditors a different amount than his "disposable income" as calculated in 11 U.S.C. § 1325(b)(2)?

## ARGUMENT

Addressing the first issue in this case, the Trustee contends that the debtor's B22C form is incorrect and must be amended. The Trustee objects to certain line item expenses claimed by the Debtor, specifically line 47b which relates to the fact that the debtor has a deduction for $341.42 for a mobile home which the debtor plans to surrender. The

instructions for line 47 on form B22C state "for each of your debts that is secured by an interest in property that you own, list the name of creditor, identify the property securing the debt, and state the average monthly payment. The average monthly payment is the total of all amounts contractually due to each secured creditor in the 60 months following the filing of the bankruptcy case, divided by 60.

The instructions for line 47 of form B22C is taken right out of Bankruptcy Code Section 707(b)(2)(A)(iii) which states,

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of, (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition…

Since the debtor's plan which was filed on the same date as the debtor's form B22C calls for the debtor to surrender the property; this would then lend to a total payment of $0 to Green Tree over the life of the plan, not the scheduled amount of $341.42.

One of the first Judges to deal with the issue as to whether historic or projected expenses should be used to determine the amount of a debtor's disposable income that must be devoted to a Chapter 13 Plan was In Re: Renicker, 342B.R. 304 (Bkrtcy.W.D.Mo). The Court stated "…the calculation of projected expenses under Section 707(b)(2)(A)(B) does not directly implicate CMI, which, as noted above, is an inherently retrospective concept. Whether to use historic or prospective expenses is free from that tension. Section 1 325(b)(2) states that "disposable income means current monthly income…less amounts reasonably *'to be expended…* for the maintenance or support of the debtor or a dependent of the debtor.' and this language is repeated in Section 1 325(b)(3)'s directive to calculate the 'amounts reasonably necessary *to be*

*expended* under paragraph (2)… in accordance with' Section 707(b)(2)(A)(B). Thus the plain language of Section 1325(b)(2) unambiguously indicates that prospective – not historical – expenses are to be used to calculate disposable income." Renicker at 309.

The Trustee also cites In Re: Crittendon, 2006 Bankr Lexis 2172 (Bkrtcy.M.D.N.C. Sept. 1, 2006) for the same proposition. The Crittendon Court discussed what debts may be listed on line 47 of form B22C based on the language of Code Section 707(b)(2)(A)(iii). The Court states "Under this language, the payment must be scheduled as contractually due in the future…" Crittendon at 4. The Court goes on to explain "In the context of a chapter 13 case in which a debtor is proposing a plan for confirmation, the terms of the plan determine whether payments have been scheduled for payment in the future and also establishes the classification of creditors on the effective date of the plan. The confirmed Chapter 13 Plan constitutes a new agreement between the debtor and the creditors and is controlling as to the payments to be made to creditors, as well as to which of the creditors are secured creditors. See In Re: Nicholson, 70 B.R. 398, 400 (Bankr. D.Colo. 1987)." Crittendon at 4. Under this analysis the debtor's scheduling of the debt of Green Tree for a mobile home that he plans to surrender exceeds the amount provided for in the plan whereby the debtor has made no provision for any payment. Therefore the Trustee contends the form B22C must be amended.

Furthermore, the Trustee cites In Re: Love, 2006 Bankr. Lexis 2081 (Bkrtcy. M.D. Ala. August 30, 2006) for the same concept. "Referring again to Section 1325(b)(1)(B), the debtor is required to pay over all of one's 'projected disposable income.' The term 'projected' contemplates forward looking or future oriented approach. One would not project or anticipate that a payment would be made on a secured

indebtedness where the collateral had been returned. Similarly, a Chapter 13 Plan is necessarily a forward looking document. It is the debtor's proposal as to what he will do in the future to deal with his debts. The term 'scheduled' in terms of Section 707(b)(2)(A)(iii) also contemplates a forward looking approach. That is, one schedules something which one expects to take place in the future and not an event which one plans to avoid. The terms 'scheduled as contractually due' should be interpreted in a way which is consistent with the underlying Chapter 13 Plan as well as the text of the Code." Love at 5-6.

By amending form B22C the debtor should be paying $344.07 to general unsecured creditors versus the proposed amount which is stated in the plan as "pro rata".

## ISSUE II

Section 1325(b)(1) provides that if the Chapter 13 Trustee or an unsecured creditor objects to confirmation of a debtor's proposed chapter 13 plan, the Court may only confirm the plan if it proposes to pay the full amount of the creditor's claim or "provides that all of the debtor's projected disposable income... will be applied to make payments to unsecured creditors under the plan." (emphasis added). Section 1325(b)(2) defines "disposable income" as "current monthly income received by the debtor" less specific expenses detailed in Form B22C. "Current monthly income" is defined in § 101(10A) as the debtor's income for the six-month period preceding bankruptcy.

The Trustee recognizes that since the enactment of the BAPCPA amendments, several Courts have considered the relevance of "disposable income" to a proposed chapter 13 plan. In the case at hand if the debtor is required to remove the amount listed

in line 47 of form B22C then debtor's proposed plan as alleged fails to satisfy "projected disposable income" requirement. Basically, two distinct lines of opinions have emerged with the majority view holding that "projected disposable income" is not synonymous with "disposable income" as defined by § 1325(b)(2). This view is grounded primarily upon the normal, ordinary meaning of "projected" which is forward-looking, rather than the historical view provided by the § 101(10A) definition of "current monthly income" and the figures found in Form B22C. *See Casey,* 356 B.R. at 522 ("The word 'projected' means to plan, figure, or estimate for the future. It is a forward-looking concept. It requires a Court to examine anticipated disposable income rather than historical disposable income, estimated disposable income, or some other type of disposable income.") In *Re: Grant,* ___ BR ___ WL 858805(Bankr EDTN 2007). These Courts believe that the language of §1325(b)(1)(B) is clear and unambiguous-section 1325(b)(1)(B)'s requirement that a plan propose to pay "projected disposable income" means that the number resulting from Form B22C is a starting point for the Court's inquiry only. The Court went on to say that, "Thus, the Court concludes that the plain meaning of § 1325(b) is dispositive of this issue. Under the clear meaning of the statute, a debtor must propose to pay unsecured creditors the number resulting from Form B22C, unless the debtor can show that this number does not adequately represent the debtor's budget projected into the future" See, e.g., In re Jass, 340 B.R. 411 (Bankr.D.Utah 2006)

These Court have held that the projection of disposable income must be based on anticipated income and/or expenses. *See, e.g., In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006); *In re Fuller*, 346 B.R. 472 (Bankr. S.D. Ill. 2006); *see also In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. March 6, 2006); *In re Kibbe*, 342 B.R. 411 (Bankr.

D.N.H. 2006), appeal argued, No. 06-019 (B.A.P. 1st Cir. October 19, 2006).  In attempting to distinguish the difference between the terms disposable income and projected disposable income it appears that the majority of the Court have struggled trying to give meaning to the term "projected". Thereby creating a new term "projected disposable income".

This emerging approach has now been put in to play where by a totality of the debtors' income plays a role whereby the Court looks at the current monthly income and disposable income as stated Form B22C, which is considered by that Court as a backward look and compares it to the current income and projected disposable income of schedules I and J. "A debtor's monthly disposable income as reflected on Form B22C is the starting point by which a Court determines the debtor's projected disposable income, but this figure can be rebutted by evidence that the debtor's actual net disposable income as of the filing date, reflected on Schedules I and J, as well as other evidence that the debtor's circumstances have changed as of the effective date of the plan" *In re Grant Supra.* This result removes any possibility of an absurd result that might be interjected by the minority view that form B22C is controlling without considering the result, but in turn puts the burden on the Court to hear testimony and rule in cases where the debtor, trustee and/or creditors can not agree.

In contrast, the other set of Courts has held that the plain language of the statute is controlling, See Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) ("The starting point in discerning congressional intent is the existing statutory text."); Toibb v. Radloff, 501 U.S. 157, 160, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991); United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct.

1026, 1030, 103 L.Ed.2d 290 (1989) ("all such inquiries must begin with the language of the statute itself"). Where the statutory language is plain, "the sole function of the Court, at least where the disposition required by the text is not absurd, is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N .A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000) (citations omitted), and therefore, the projection of disposable income is based on current monthly income less reasonably necessary expenses. *See, e.g., In re Mitchell*, No.06-80666, (Bankr. Neb. Jan. 5, 2007); *In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wis. July 19, 2006); *In re Kagenveama*, No. 05-28079 (Bankr. D. Ariz. July 18, 2006); *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. June 30, 2006); *In re Barr*, 341 B.R. 181 (Bankr. M.D.N.C. 2006) *In re Brady*. ___ BR ____, WL 549359(Bankr, N.D.J.2007).

In, *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006), the Court points out that nowhere else, other than in section 1325(b)(1)(B) and preceding the word "projected" does the term "disposable income" appear in the referenced subsection. Unless the definition applies to "projected disposable income" it has no meaning. That is, "if 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose." However, The phrase "projected disposable income" in § 1325(b)(1)(B) existed prior to the enactment of BAPCPA. Despite this fact, the distinction between "disposable income" and "projected disposable income" was not a significant issue of statutory interpretation prior to BAPCPA. One pre-BAPCPA case sometimes cited as making a distinction between "disposable income" and "projected disposable income" is *(In re Anderson)*, 21 F.3d 355 (9th Cir.1994). See, e.g., Jass, 340 B.R. at 417, n. 18.

The Brady Court *Supra,* quoting *In re Guzman*, 345 B.R. 640, 642 (Bankr.E.D.Wis.2006), "although contrary to the stated purpose of BAPCPA and seemingly discriminatory against chapter 13 debtors with incomes below the median, the unambiguous language of the new statute compels but one answer: the above-median debtor's expense deductions are governed by Form B22C, not by Schedule J. If the above-median debtor's Form B22C contains enough deductions, the debtor will be entitled to obtain confirmation of a plan paying nothing to the unsecured creditors, even though the debtor's budget shows that excess funds are available." Stress the point that although the result of such enforcement is contrary to the popular notion that BAPCPA would require well-to-do debtors to repay as much of their debts as possible, strict application of § 1325(b)(3) dictates that in above-median cases, bankruptcy Court are no longer permitted to review the debtor's Schedule J to determine what expenses are reasonably necessary for the debtor's support, or to require that excess Schedule I income over Schedule J expenses must be dedicated to the plan. *In re Brady. supra*,

## IN CONCLUSION

The Trustee contends that it was Congress' intent for the Chapter 13 debtors to pay back their creditors and any result contrary to that simply undermines what Congress intended. Congress did not intend to create a "Cook Book" approach. Each case should be dealt with on an individual basis. In cases that are filed in which the debtor is above median income, the statute and case law seem to be at odds with each other. In any event, the Courts need to intervene. In the case at hand, under the minority view that form B22C is controlling, the general unsecured creditors would be paid a greater percentage than that currently proposed by the debtor in his plan.

The Trustee asks that this Honorable Court deny confirmation, give the debtor an opportunity to amend B22C by removing the value of the mobile home and rescheduling a 341 meeting of creditors so that the debtor may be questioned under oath about his amended schedules and give the Trustee an opportunity to reevaluate his proposed plan and decide if confirmation should be recommended.

As a final note it appears that the Honorable Judith H. Wizmur said it best, "While this provision of the new statute does not perform as advertised,- perhaps prompting trustees, unsecured creditors and even some bankruptcy Judges to long for the 'good old days' of reviewing Schedules I and J ... the mandate of new § 1325(b)(3) is clear."

Submitted this 15th day of April, 2007

C. Kenneth Still
Chapter 13 Trustee


*/s/ James M Setters*
James M Setters
Attorney for Trustee
PO Box 511
Chattanooga TN 37401

CERTIFICATE OF SERVICE


I certify that on April 16, 2007, I serviced a copy of the Trustee's Brief in Support of Objection to Confirmation, to the United States Trustee, the debtor's attorney, the United States Bankruptcy Court and all interested parties by personal delivery, or mailing via the U.S. Postal Service, postage prepaid, at their scheduled addresses.

**Kenneth Rannick**
**4416 Brainered Road**
**Chattanooga TN 37411**

**Kyle Weems**
**5312 Ringgold Road Suite 203**
**Chattanooga TN 37412**

*/s/ James M Setters*

**James M Setters**