

**SIGNED this 10 day of October, 2007.**

_____
**R. Thomas Stinnett
UNITED STATES BANKRUPTCY JUDGE**

_____


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                          No. 07-10462
                                                                CHAPTER 13

CHAD EDWIN SPURGEON,

       DEBTOR.


Appearances:  Kenneth C. Rannick, Kenneth C. Rannick, P.C., Chattanooga, Tennessee, for the
Debtor

               James M. Setters, Chattanooga, Tennessee, for C. Kenneth Still, Chapter 13 Trustee

The HonorableR. Thomas Stinnett
United States Bankruptcy Judge


**MEMORANDUM**

        The chapter 13 trustee has objected to confirmation of Mr. Spurgeon's proposed

chapter 13 plan on the ground that it does not satisfy the disposable income test. The trustee contends

the plan does not require Mr. Spurgeon to use all his projected disposable income for payments under

the plan. 11 U.S.C. § 1325(b)(1). Mr. Spurgeon calculated disposable income by deducting installment payments on a secured debt to Green Tree Servicing for the 60 months after the filing of his chapter 13 case. Mr. Spurgeon will not make those payments or any regular payments to Green Tree as a secured creditor. His proposed chapter 13 plan provides for surrender of the mobile home securing the debt and payment of the debt as unsecured. The court has also lifted the automatic stay to allow Green Tree to repossess and foreclose. 11 U.S.C. § 362(a), (d). The question is whether the statutes still allow Mr. Spurgeon to deduct the contractual installment payments for the purpose of determining disposable income or projected disposable income.

The bankruptcy code defines disposable income but not projected disposable income. 11 U.S.C. § 1325(b)(1), (2). Disposable income is the difference between monthly income and monthly deductible expenses. The statutes provide the rules for determining monthly income and monthly deductible expenses. 11 U.S.C. §§ 1325(b)(2) & 101(10A).

As a general rule, deductible expenses are amounts reasonably necessary to be expended by the debtor for the maintenance or support of the debtor and the debtor's dependents. 11 U.S.C. § 1325(b)(2)(A). The general rule focuses on actual future expenses by referring to amounts "to be expended." The general rule apparently does not allow deduction of expenses that will not continue during the time the debtor is performing the plan.[1] *Beskin v. McPherson (In re McPherson)*, 350 B.R. 38 (Bankr. W. D. Va. 2006); *In re Edmunds*, 350 B.R. 636 (Bankr. D. S. C. 2006); *In re McGillis*, 370 B.R. 720 (Bankr. W. D. Mich. 2007).

The rules for determining deductible expenses are more detailed in this case because Mr. Spurgeon's current monthly income exceeds the relevant median family income. The court must determine deductible expenses by referring to the expense provisions of the means test for chapter 7 cases. 11 U.S.C. § 1325(b)(3) & § 707(b)(2)(A), (B). The deduction rules in the means test create the problem in this case, as explained below in more detail.

---

[1] This part of the statute also allows expense deductions for domestic support obligations, charitable contributions, and if the debtor is engaged in business, expenditures necessary to operate, continue, or preserve the business. 11 U.S.C. § 1325(b)(2)(A), (B).

When Mr. Spurgeon filed this chapter 13 case, he owed a debt to Green Tree Servicing secured by a mobile home that was not his residence. Mr. Spurgeon's contract with Green Tree required installment payments of $341.42 per month for each of the 60 months after he filed his chapter 13 case. Mr. Spurgeon included these installment payments when he calculated the expense deduction for average monthly payments on secured debts. The deduction of the payments due to Green Tree is supposedly allowed by one of the expense provisions incorporated from the means test. The statute provides:

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii).

Mr. Spurgeon relies on clause (I) above. He asserts that Green Tree was a secured creditor, and the monthly installment payments were amounts scheduled by the contract as due to Green Tree in the 60 months after bankruptcy.

Mr. Spurgeon's proposed chapter 13 plan provides that he will surrender the mobile home to Green Tree. When a chapter 13 plan provides that the debtor will surrender all of the creditor's collateral, the plan is not required to provide for any payments on the debt as an allowed secured claim. 11 U.S.C. § 1325(a)(5). Mr. Spurgeon's proposed chapter 13 plan does not provide for the installment payments set by the contract. It does not provide for regular payments in a different amount. It does not provide for payments of any kind that will add up to a fixed total, with or without

interest. In summary, Green Tree will not receive any payments under the chapter 13 plan as a secured creditor, the holder of an allowed secured claim.

The court has also lifted the automatic stay to allow Green Tree to repossess and foreclose. The order lifting the stay approved the chapter 13 trustee's abandonment of the mobile home. 11 U.S.C. § 554. Green Tree will acquire possession of the mobile home as a result of the order lifting the stay or as a result of confirmation of the proposed plan.

State law requires Green Tree to make a commercially reasonable disposition of the mobile home. Ala. Code § 7-9A-610; *Dixon v. Green Tree, Inc. (In re Dixon)*, 2007 WL 703612 (Bankr. M. D. Ala. Mar. 5, 2007); Tenn. Code Ann. § 47-9-610; *Auto Credit of Nashville v. Wimmer*, 2007 WL 2330844 (Tenn. Aug. 16, 2007). If the foreclosure price does not pay all the debt and expenses, Green Tree can file an amended proof of claim for the deficiency as a general (non-priority) unsecured claim. *In re Delmonte*, 237 B.R. 132 (Bankr. E. D. Tex. 1999); *In re Morris*, 289 B.R. 783 (Bankr. S. D. Ga. 2002); *In re Tyler*, 166 B.R. 21 (Bankr. W. D. N. Y. 1994); *see also In re McBride*, 337 B.R. 451 (Bankr. N. D. N. Y. 2006). Mr. Spurgeon's proposed plan is a remainder plan; general unsecured claims receive the amount left over after paying priority claims and making payments on allowed secured claims. The exact percentage to be paid on general unsecured claims, including Green Tree's deficiency claim, will not be known until sometime during the performance of the plan.

In summary, either the lifting of the automatic stay or confirmation of the proposed plan will relieve Mr. Spurgeon from the need to make future payments to Green Tree as a secured creditor. Nevertheless, Mr. Spurgeon reduced his disposable income by deducting the monthly installment payments to Green Tree for the 60 months after he filed his chapter 13 case. This deduction apparently caused an understatement of disposable income or projected disposable income – if they are intended to be an accurate estimate of the money the debtor will have available under the proposed plan to pay general unsecured claims.

The court is not saying that the calculation of disposable income was inconsistent with the directions for completing Official Form B22C. The court assumes the calculation followed the

directions. This does not necessarily mean the deduction should be allowed for the purpose of calculating either disposable income or projected disposable income, as explained below.

The debtor in a chapter 7 bankruptcy case can also surrender collateral to a secured creditor. 11 U.S.C. § 521(a)(2). Some courts have held that the deduction statute in question, as part of the chapter 7 means test, still allows the debtor to deduct the future installment payments. 11 U.S.C. § 707(b)(2)(A)(iii)(I); *In re Hartwick*, 352 B.R. 867 (Bankr. D. Minn. 2006), *affirmed in part, reversed in part*, *Fokkena v. Hartwick*, 2007 WL 2350560 (D. Minn. Aug. 20, 2007); *In re Simmons*, 357 B.R. 480 (Bankr. N. D. Ohio 2006); *In re Nockerts*, 357 B.R. 497 (Bankr. E. D. Wis. 2007); *In re Randle*, 358 B.R. 360 (Bankr. N. D. Ill. 2006). At least one court has reached the same result in a chapter 13 case; it allowed the chapter 13 debtor to deduct future, contractual installment payments on a secured debt even though the chapter 13 plan provided for surrender of the collateral. *In re Oliver*, 2006 WL 2086691 (Bankr. D. Ore. Jun. 29, 2006).

The oddness of this result could be lessened by holding that actual ability to pay after confirmation is a factor in deciding whether the debtor proposed the plan in good faith. 11 U.S.C. 1325(b)(3) & 1307(c); *Alt v. United States (In re Alt)*, 305 F.3d 413 (6th Cir. 2002); *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123 (6th Cir. 1990) (good faith filing of chapter 13 case); *see also* 11 U.S.C. § 707(b)(3); *In re Simmons*, 357 B.R. 480 (Bankr. N. D. Ohio 2006); *In re Nockerts*, 357 B.R. 497 (Bankr. E. D. Wis. 2007) (income available as result of surrender of collateral but not within calculation of disposable income still a factor in determining good faith). This combination of rules would be an odd result in itself. Furthermore, the good faith requirement is always in danger of becoming a catch-all ground for objecting to confirmation on the basis of facts that should support an objection under one of the economic tests for confirmation. 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 193.1 (3rd ed. 2006). Before using the good faith requirement to shape the results of the disposable income test, the court should carefully interpret the statutes to determine whether they actually allow the deduction claimed by Mr. Spurgeon.

Most courts have not allowed the deduction in chapter 13 cases when the proposed plan provided for surrender of the collateral. This court agrees with some of their reasoning. In particular, confirmation of the plan will change the facts relevant to the deduction. The amounts that would otherwise be due under the contract after the debtor filed the chapter 13 case will not be scheduled as contractually due to a secured creditor. They will not be within the terms of the deduction statute. *Beskin v. McPherson (In re McPherson)*, 350 B.R. 38 (Bankr. W. D. Va. 2006); *In re Edmunds*, 350 B.R. 636 (Bankr. D. S. C. 2006).

For this reasoning to have effect, however, the court must be able to apply the deduction statute to the facts at the time of confirmation or that will result from confirmation. In this regard, the relevant chapter 13 statute refers to the debtor's *projected* disposable income. 11 U.S.C. § 1325(b)(1). Even if the deduction is correct for calculating disposable income under Form B22C, the deduction may be incorrect for calculating projected disposable income.

The process of projecting disposable income could be simple multiplication; take the amount of disposable income calculated in Form B22C, and multiply it by the number of months required of the plan. *In re Hanks*, 362 B.R. 494 (Bankr. D. Utah 2007). On the other hand, projecting disposable income could allow the court to determine the deduction based on the facts at a time of confirmation or that will result from confirmation. *Beskin v. McPherson (In re McPherson)*, 350 B.R. 38 (Bankr. W. D. Va. 2006); *In re Edmunds*, 350 B.R. 636 (Bankr. D. S. C. 2006); *In re Love*, 350 B.R. 611 (Bankr. M. D. Ala. 2006).

An argument can be made that the deduction statute prevents the more expansive kind of projection because events during the chapter 13 case will not change the amounts scheduled by the contract as due during the chapter 13 case or the creditor's status as secured. If a secured creditor is allowed to repossess, foreclose, and collect from the proceeds before confirmation, then it will no longer be a secured creditor. Any amount that remains contractually due will not be due to a secured creditor. Likewise, if the plan provides for surrender of the collateral, any deficiency claim will usually be paid under the plan as a general unsecured claim. Confirmation of the plan may be viewed as

modifying or overriding the contract. Under either theory, the amounts that were contractually due to a secured creditor will no longer be contractually due to a secured creditor after confirmation.[2] The deduction statute simply refers to amounts scheduled as contractually due to a secured creditor after the filing of the bankruptcy case. It does not say that the determination of those amounts must be made according to the facts at the time the debtor filed the chapter 13 case or without regard to events in the chapter 13 case, including the effect of confirmation of the proposed plan. 11 U.S.C. § 707(b)(2)(A)(iii)(I). Likewise, § 1325(b) does not expressly require the court to consider only the facts when the debtor filed the chapter 13 case. In summary, the wording of the deduction statute does not require the court to apply it to the facts when the debtor filed the chapter 13 case.

Furthermore, the means test provisions are subject to the general rule stated in § 1325(b)(2). The court is supposed to use the means test provisions to determine the amounts reasonably necessary "to be expended" for maintenance and support of the debtor or the debtor's dependents. 11 U.S.C. § 1325(b). The use of "to be expended" generally requires the court to determine actual future expenses instead of being bound to assume that past expenses will continue. The court should take into account events in the chapter 13 case that have changed or will change the amounts reasonably necessary to be expended for payments on secured debts. The use of "projected" to describe "disposable income" allows this method of determining the deductible expense. *In re Meek*, 370 B.R. 294 (Bankr. D. Idaho 2007); *In re Pak*, 357 B.R. 549 (Bankr. N. D. Cal. 2006).

This reasoning brings up the use of "actual expenses" in the means test statute. In the basic calculation of living expenses, the statute uses the national and local standards established by the Internal Revenue Service. The statute then allows the debtor to deduct some actual expenses. 11 U.S.C. § 707(b)(2)(A)(I), (ii) (subject to the reasonable and necessary limit). Thus, the statute distinguishes "actual" expenses – real, provable expenses of the chapter 13 debtor – from the presumed expenses set by the national and local standards. This distinction does not mean that

---

[2] The facts may lead a court to create an equitable exception from the general rule and require the plan to treat a claim as secured even though it provides for surrender of the collateral. *In re Engebregtsen*, 337 B.R. 677 (Bankr. E. D. Wis. 2006).

Congress intended average monthly payments on secured debts to be like the national and local standards – not a measure of actual expenses. Indeed, the deduction for average monthly payments on secured debts deals with the debtor's actual liabilities on secured debts. The problem is determining what they are. Is the court limited to considering the facts at the moment the debtor filed the chapter 13 case? Is the court required to ignore the effect of the proposed chapter 13 plan or other events in the chapter 13 case? The court thinks not. Congress may have intended that result in chapter 7 cases, but this is a chapter 13 case. The court is required to determine *projected* disposable income. As a result, the court should determine average monthly payments on secured debts by considering the effect of confirming the proposed chapter 13 plan and the lifting of the automatic stay so that Green Tree can foreclose.

The argument has been made that this method of determining deductible expenses amounts to ignoring the statutory definitions. *In re Alexander*, 344 B.R. 742 (Bankr. E. D. N. C. 2006); *In re Berger*, 2007 WL 1704403 (Bankr. M. D. Ga. Jun. 11, 2006). The court disagrees. The statutes still identify the kinds of expenses that can be deducted and limit the deductible amounts. The difference is the time of determining the relevant facts. The statutes apply, but they apply to the facts as changed by events in the chapter 13 case, including changes that will result from confirmation of the proposed plan. *In re Grant*, 364 B.R. 656 (Bankr. E. D. Tenn. 2007) (Judge Stair); *In re Devilliers*, 358 B.R. 849 (Bankr. E. D. La. 2007); *In re Hardacre*, 338 B.R. 718 (Bankr. N. D. Tex. 2006); *In re Edmunds*, 350 B.R. 636 (Bankr. D. S. C. 2006); *In re Upton*, 363 B.R. 528 (Bankr. S. D. Ohio 2007). The court can determine the debtor's average monthly payments on secured debts according to what the debtor will actually pay to Green Tree as a secured creditor during performance of the chapter 13 plan.

If the disposable income test cannot be applied in this way, then it adopts two inconsistent standards for determining deductible expenses. When the expense provisions of the means test do *not* apply, the old system of determining projected disposable income applies. It allows the court to take into account changes in the facts during the chapter 13 case, including the effect of

confirmation of the proposed plan. On the other hand, when the expense provisions of the means test apply, the court cannot consider such changes. Congress surely did not intend to create such a system. *In re Meek*, 370 B.R. 294 (Bankr. D. Idaho 2007) (not intended); *contra*, *In re Miller*, 361 B.R. 224 (Bankr. N. D. Ala. 2007) (different standards intended).

The court also cannot ignore the purpose of the statutes. Why did Congress make the expense provisions of the Chapter 7 means test part of the disposable income test in chapter 13 cases? Congress was concerned with the deductible expenses of chapter 13 debtors with income above the family median. Congress wanted to prevent them from claiming and prevent the courts from allowing higher expense deductions than Congress thought appropriate. By keeping down deductions, Congress meant to increase disposable income and thereby increase the plan payments on general unsecured claims. The statutes will have the opposite effect if the deduction statute must be applied without regard to fact changes brought about by the chapter 13 case. That result would be absurd. *In re Gress*, 344 B.R. 919 (Bankr. W. D. Mo. 2006).

That result also is not required by the plain meaning standard for interpreting statutes. Courts have applied the plain meaning standard to reach opposite conclusions as to the meaning of "projected disposable income." *Compare In re Risher*, 344 B.R. 833, (Bankr. W. D. Ky. 2006); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006), *with In re Hanks*, 362 B.R. 494 (Bankr. D. Utah 2007); *In re Alexander*, 344 B.R. 742 (Bankr. E. D. N. C. 2006). The outcome turns on the court's choice of a definition for "projected." Some courts hold that "projected" plainly and unambiguously requires the court to multiply the disposable income amount from Form B22C by the number of months required of the plan. The dictionary definitions of "projected" do not require that result. *See, e.g., In re Devilliers*, 358 B.R. 849 (Bankr. E. D. La. 2007); *In re Grant*, 364 B.R. 656 (Bankr. E. D. Tenn. 2007) (Judge Stair). Indeed, if Congress wanted simple multiplication, it could have easily drafted the statute to say that. When Congress wanted that result, it expressly required simple multiplication or division in the statutes creating the means test and the disposable income test. 11 U.S.C. § 707(b)(2)(A)(I), (iii); 11 U.S.C. § 1325(b)(3), (4).

In this regard, the relevant statutes are not entirely backward looking; they do not lock the court into considering only the debtor's financial history or facts at the moment of filing bankruptcy. The statutes repeatedly use words indicating that the court should be concerned with the debtor's future financial condition. 11 U.S.C. § 1325(b)(2) ("to be expended"; "becomes payable after the date the petition is filed"; "year in which the contributions are made"); 11 U.S.C. § 1325(b)(3) ("to be expended"); 11 U.S.C. § 707(b)(2)(A) (iii)(I) ("amounts scheduled as contractually due . . . following the date of the petition"); 11 U.S.C. § 707(b)(2)(A)(iii)(II) (additional amounts necessary under a chapter 13 plan); 11 U.S.C. § 707(b)(2)(A)(iv) (expense of payments on all priority claims).

The statutes allow the debtor to rebut the result of the disposable income test – to show less disposable income – by proving lower income or larger expenses. 11 U.S.C. § 1325(b)(3) & § 707(b)(2)(B). That right does not affect the court's reasoning. The court is concerned with the elements of the disposable income test, especially whether they must be applied to understate the debtor's income that will be available after confirmation to pay unsecured debts.

This brings the court to another basic argument against projecting deductible expenses on the basis of events in the chapter 13 case, including the terms of the plan. To calculate disposable income, the court uses "current monthly income" – an average of the debtor's income in the six months before filing bankruptcy 11 U.S.C. §§ 1325(b)(2) & 101(10A). This leads to the proposition that the court cannot determine current monthly income in light of income at any other time – before or after the six month period set by the statute. This proposition leads to an argument: the court cannot calculate deductible expenses on the basis of changes during the chapter 13 case because that will make the disposable income test an illogical comparison of future expenses and past income.

This argument can be understood as part of a broader argument based on the structure of the disposable income test. The disposable income test is intended to measure the debtor's ability to pay unsecured claims under the proposed chapter 13 plan or some chapter 13 plan. 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 163.1 (3rd ed. 2006). The problem is that elements of the test seem to be logically inconsistent with that purpose. For example, the facts at the moment the debtor filed the

chapter 13 case may prove that current monthly income is a serious miscalculation of the amount the debtor will be able to pay after confirmation. *In re Meek*, 370 B.R. 294 (Bankr. D. Idaho 2007); *In re Lanning*, 2007 WL 1451999 (Bankr. D. Kan. May 15, 2007). Likewise, if the deduction statute must be applied without regard to the effects of the chapter 13 case, then it will allow the debtor to reduce disposable income by deducting amounts that will not be paid to secured creditors. How can these elements logically be intended to measure the amount of income the debtor will have for the payment of unsecured debts under the chapter 13 plan?

One possible explanation is that the disposable income test works like an algorithm used for calculating federal income taxes. The purpose of the algorithm is known, but the person using the algorithm cannot easily see how the steps and the outcome are logically related to the purpose. This possible explanation of the disposable income test leads to an argument: the court should not interpret any step in the test to give it a more logical connection to the overall purpose of the test because that may only disrupt an algorithm that is correctly structured to carry out the overall purpose of the test.

This theory makes some sense with regard to the means test in chapter 7 cases. It deals with the question of whether the chapter 7 case should be dismissed as an abuse of the bankruptcy law. 11 U.S.C. § 707(b). It is apparently intended to determine the debtor's ability to pay unsecured claims under a chapter 13 plan. Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am.Bankr.L.J. 231, 272 (2005). In a chapter 7case, however, the court is not faced with any particular chapter 13 plan, and the debtor might be able to propose a wide variety of confirmable chapter 13 plans. The court could construct a hypothetical chapter 13 plan on the basis of information in the chapter 7 case. That effort is not necessary, however, if Congress created the means test as a blunt measure of the debtor's ability to pay without regard to the terms of any possible chapter 13 plan. The chapter 7 means test may lead to results that are logically and practically correct, in the view of Congress, even if the test is not as accurate as other possible tests and sometimes leads to strange results.

The algorithm argument makes less sense with regard to the disposable income test in chapter 13 cases. The disposable income test is *not* used to determine whether the chapter 13 case is presumed to be an abuse of the bankruptcy law. The question is whether to deny confirmation of a particular chapter 13 plan. As to secured debts, a chapter 13 plan will usually include a separate provision for each, and the plan is likely to reduce or eliminate the contract payments on some or all of the secured debts. 1 Keith M. Lundin, *Chapter 13 Bankruptcy* §§ 4.7 & 4.8 (3d ed. 2006). The deduction statute incorporated from the chapter 7 means test does not expressly take these changes into account. If this means the court must ignore these changes, then the deduction statute allows the debtor to overstate the deductible expense for payments on secured debts and thereby retain income that will be available to pay unsecured debts during the term of the plan. This result seems to be totally at odds with the purpose of the disposable income test.

It could still be logical, however, if the overstatement of the deductible expense for secured debt payments will be filtered out or offset by other factors in the disposable income test or the method of combining all the factors. Numerous courts have pointed out that this will not happen; the overstatement of the expense will carry through and reduce disposable income. That outcome contradicts the purpose of the disposable income test and the reasons for which Congress incorporated the means test deduction statute into the disposable income test. *See*, *e.g.*, *In re Brady*, 361 B.R. 765 (Bankr. D. N. J. 2007); *In re Devilliers*, 358 B.R. 849 (Bankr. E. D. La. 2007); *In re Alexander*, 344 B.R. 742 (Bankr. E. D. N. C. 2006); *In re Hardacre*, 338 B.R. 718 (Bankr. N. D. Tex. 2006); *see generally* David G. Carlson, *Means Testing: The Failed Bankruptcy Revolution of 2005*, 15 Am.Bankr.Inst.L.Rev. 223 (2007).

In summary, the algorithm argument makes sense only if an analysis of the algorithm reveals that it correctly carries out the purpose of the test, despite the apparently illogical step, or the court cannot determine that the supposedly illogical step prevents the algorithm from working correctly. Neither situation exists in this case. An expense deduction for payments that will not be made on the secured debt to Green Tree prevents the disposable income test from working correctly.

This reasoning as to the overall structure of the disposable income test has not specifically dealt with the mixed comparison problem that began the discussion. Does projecting expenses in light of events in the chapter 13 case make the disposable income test illogical because it compares future expenses to past income? Some courts have reasoned that the statutes do not require a mixed comparison because "projected" also allows the court to project a more accurate amount of current monthly income. *Kibbe v. Sumski (In re Kibbe)*,, 361 B.R. 302 (1st Cir. B.A.P. 2007); *In re Meek*, 370 B.R. 294 (Bankr. D. Idaho 2007). The court need not reach that conclusion.

Suppose the court cannot interpret the statutes to avoid illogical results flowing from the definition of current monthly income as an average of past income. That should not prevent the court from adopting a reasonable interpretation of "projected disposable income" to avoid an absurd result on the expense side of the equation. Just because one step in the disposable income test will produce illogical results in some cases does not mean the court must compound the problem by interpreting another step to bring about illogical results in almost every case. *In re Love*, 350 B.R. 611 (Bankr. M. D. Ala. 2006).

Likewise, even if Congress locked the courts into an average of past earnings for the income side of the test, Congress could have chosen to allow the courts to project deductible expenses, especially payments on secured debts, in light of changes brought about by the chapter 13 case. The projection process for expenses is simple and will carry out Congressional intent for the disposable income test.

The court concludes that projecting disposable income allows the court to apply the deduction statute on the basis of events in the chapter 13 case and the terms of the proposed plan. Specifically, the order lifting the stay and the plan provision for surrender of the mobile home mean that the deduction should not include the post-filing installment payments to Green Tree that were called for by the contract. The result is that Mr. Spurgeon's projected disposable income is larger than the amount shown on Form B22C by the amount of the monthly installment payment. Adding the

installment payment of $341.42 per month to the $2.65 per month shown on Form B22C makes the figure for projected disposable income at least $344.07 per month.

The plan provides for payments to the trustee of $125 per week. That works out to $541.67 per calendar month, assuming the debtor is paid for 52 weeks of work. This amount is more than the projected disposable income of $344.07 per month. Projected disposable income, however, is supposed to measure the amount of income the debtor will have available during performance of the plan for payments on unsecured claims *after* making payments on secured debts. Official Form B22C, Lines 25B, 28, 29, 57, 57, 58; 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 163.1 (3rd ed. 2006). Thus, Mr. Spurgeon should have the $344.07 per month available for payments on unsecured debts. Most of Mr. Spurgeon's proposed payments – $421 per month – will be used to pay secured debts. That will leave about $120 per month for payment of unsecured claims. Thus, the proposed plan does not devote all of Mr. Spurgeon's projected disposable income to payments under the plan.

The court notes that the amount of projected disposable income as calculated by the court – $344.07 per month – is close to the amount that can be calculated using Mr. Spurgeon's schedules I and J. They originally showed monthly net income of $758.32, but that excludes any deduction for payments on secured debts. If the court deducts the proposed payments of $421 per month on secured debts, that leaves $337.38 for payment on unsecured debts. Mr. Spurgeon amended schedules I and J after the meeting of creditors to show a smaller amount of monthly net income. The court agrees with the trustee that the court should not consider the amendment since it was made after the meeting of creditors and the filing of the trustee's objection. The court will deny confirmation, and the amendments to the schedules can be considered at a new meeting of creditors if the debtor files an amended plan.

The parties have not argued whether the expense deduction should be allowed for payments actually made on the debt as a secured debt before confirmation or return of the collateral. As far as the court knows, no such payments have been made.

Mr. Spurgeon has not argued that the deduction should be allowed on the ground that his earlier divorce created a domestic support obligation for payments on the debt to Green Tree. His former wife has filed an objection to confirmation that raises the question of whether the divorce decree and bankruptcy law require the plan to provide for payment of the debt to Green Tree for her benefit without regard to surrender of the collateral. 11 U.S.C. §§ 1322(a)(2), 507(a)(1), 101(14A) & 1325(a)(8). The court will deal with that objection in a separate opinion.

This memorandum constitutes the court's findings of facts and conclusions of law. Fed. R. Bankr. Pro. 7052.

# # #