

**SIGNED this 10 day of October, 2007.**

_____
R. Thomas Stinnett
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                                    Case No. 07-10462
                                                                              Chapter 13
CHAD EDWIN SPURGEON,

       Debtor.

Appearances:    Kenneth C. Rannick, Kenneth C. Rannick, P.C., Chattanooga, Tennessee, for the Debtor

                            Kyle R. Weems, Weems & Ronan, Chattanooga, Tennessee, for Alicia Lynn Jackson

The Honorable R. Thomas Stinnett
United States Bankruptcy Judge

### MEMORANDUM

       Alicia Lynn Jackson filed an objection to confirmation of the chapter 13 plan proposed by the debtor, Chad Edwin Spurgeon. The objection states several grounds, but since the objection form does not allow much elaboration, the court begins with the facts.

Ms. Jackson and the debtor were granted a divorce in 2005 by the Circuit Court of Jackson County, Alabama. The divorce decree incorporated the parties' agreement with regard to support and the division of their property. For convenience the court will refer to both as the divorce decree or the decree. *Ex parte Littlepage*, 796 So.2d 298 (Ala. 2001).

The divorce decree reveals that the debtor and Ms. Jackson have two minor children, and Ms. Jackson is the primary custodial parent. The decree ordered the debtor to pay child support of $150 per week. It provided that neither party would pay alimony to the other.

The decree generally ordered the person who was awarded an item of property to pay the debt secured by the item. The debtor and Ms. Jackson were both liable on a debt to Green Tree secured by a mobile home, but the debtor was awarded the mobile home and ordered to pay the debt to Green Tree. The debtor was also awarded a home under construction on the same land and ordered to pay for it. Likewise, Ms. Jackson was awarded a vehicle and ordered to pay the debt it secured. The decree specifically provided:

> The parties [own] a 1996 16 x 80 mobile home. Said mobile home is financed with Green Tree Finance in the name of both parties. The Defendant [Mr. Spurgeon] shall be awarded this mobile home and shall be responsible for any indebtedness on the same. The parties are building a home located immediately in front of said mobile home. The Defendant [Mr. Spurgeon] shall also be awarded the home which is under construction and shall be responsible for the same.
>
> The parties own a 2002 Nissan [Xterra] which is listed in the name of the Defendant [Mr. Spurgeon] but is the primary vehicle of the Plaintiff. The Plaintiff shall be awarded this vehicle and shall be responsible for the indebtedness on the same.

The decree also ordered the debtor to pay for a truck, a motorcycle, and a four-wheeler that were awarded to him.

In one provision, however, the debtor may have been ordered to pay a secured debt without regard to who would have possession of the collateral:

> The parties are indebted to America's Choice, formerly Rhode's Furniture. The Defendant [Mr. Spurgeon] shall be responsible for this debt and shall hold the Plaintiff harmless from the same.

The decree does not expressly award to either party the property securing the debt to America's Choice.  The property would have come under the catch-all provision for personal property, which states that "All personal property shall be equitably divided by the parties." The debtor's schedules identify the property as miscellaneous household items. The parties may or may not have divided the property, but in any case, the decree required the debtor to pay the debt and hold Ms. Jackson harmless from her liability.

Of course, the decree also included a catch-all provision for debts not specifically dealt with:

> Each party shall be responsible for any debt which is listed solely in [his or her] name and shall be responsible for any debt [he or she] created since the date of the separation.

Ms. Jackson filed a petition for contempt in the divorce court. Later she filed a petition to amend the original petition for contempt. In the petition to amend, she alleged that the divorce decree required the debtor to refinance the mobile home and have her relieved from liability for the debt.

Ms. Jackson objected to confirmation of the chapter 13 plan using the form that is standard in this court with some typed additions. The form often leaves the exact factual basis of an objection unclear even with typed additions. For this reason, the court begins with what seems to be Ms. Jackson's primary argument against confirmation.

Ms. Jackson argues that since the divorce decree required the debtor to pay the joint debt to Green Tree, then the debt must be paid in full under the chapter 13 plan despite the debtor's surrender of the mobile home securing the debt.

A chapter 13 plan must provide for full payment of priority claims. 11 U.S.C. §§ 1322(a)(2) & 1325(a)(1). Priority claims include amounts due on a "domestic support obligation" *after* the debtor filed his chapter 13 petition. 11 U.S.C. §§ 507(a)(1) & 101(14A). There is another confirmation requirement for domestic support obligations. The debtor must be current in payments on domestic support obligations. 11 U.S.C. § 1325(a)(8). The question is whether the debtor owes a domestic support obligation to Ms. Jackson for the debt to Green Tree.

The debtor contends that he does not owe Ms. Jackson a domestic support obligation for payment of the debt to Green Tree. The argument is that the divorce decree must have created a new obligation, a new debt, from him to Ms. Jackson for payment of the debt to Green Tree, but the decree failed to do so because it did not include a clause requring him to hold Ms. Jackson harmless on the debt. By way of comparison, the decree required the debtor to hold Ms. Jackson harmless from her liability on the debt to America's Choice. The hold harmless clause created a new debt from the debtor to Ms. Jackson for payment of the debt to America's Choice. This new debt arose from the divorce decree and may or may not qualify as a domestic support obligation. 11 U.S.C. § 101(14A); *Schweitzer v. Schweitzer (In re Schweitzer)*, 370 B.R. 145 (Bankr. S. D. Ohio 2007). The debtor argues that since the divorce decree did not expressly impose a hold harmless obligation on the debtor with regard to the debt to Green Tree, then the decree did not create a new debt that might be a domestic support obligation. 11 U.S.C. §§ 101(14A), 101(5) & 101(12) (definitions of domestic support obligation, claim & debt). The court disagrees.

Non-bankruptcy law generally determines whether the debtor owes a debt. 11 U.S.C. § 101(5), (12); *In re Cleveland*, 349 B.R. 522 (Bankr. E. D. Tenn. 2006). The divorce decree was entered by a state court in Alabama. The Alabama courts seem to take it for granted that Ms. Jackson will have a claim against the debtor if he fails to pay the debt to Green Tree, and she is forced to pay. By ordering the debtor to pay the debt to Green Tree, the divorce decree created a contract debt from the debtor to Ms. Jackson even without a hold harmless clause. *Ex parte*

*Thompson*, 282 Ala. 248, 210 So.2d 808 (1968); *Dolberry v. Dolberry*, 920 So.2d 573 (Ala. Ct. Civ. App. 2005). The lack of a hold harmless clause does not prevent the decree from making the debtor liable to Ms. Jackson for payment of the debt to Green Tree.

Judge Stair reached the same result in dealing with a divorce decree entered by a Tennessee court. *Crawford v. Osborne (In re Osborne)*, 262 B.R. 435 (Bankr. E. D. Tenn. 2001); *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195 (6th Cir. B.A.P. 1998); *Ruhlen v. Montgomery (In re Montgomery)*, 310 B.R. 169 (Bankr. C. D. Cal. 2004).

The decision that the divorce decree created a debt from the debtor to Ms. Jackson for payment of the debt to Green Tree leaves open the question of whether the debt is a domestic support obligation. The parties apparently intended to reserve that question for a later hearing. The debtor's post-hearing brief refers to the earlier hearing as a preliminary hearing and argues only that the decree did not create a debt. Ms. Jackson's post-hearing brief requests a hearing on both issues, the existence of a debt and whether the debt qualifies as a domestic support obligation. The court will set a hearing on the question of whether the debt is a domestic support obligation.

Ms. Jackson also argued that the debtor's obligation under the divorce decree to pay the debt to Green Tree created a debt to her that can be excepted from discharge under § 523(a)(15) of the bankruptcy code. 11 U.S.C. § 523(a)(15). For a debt to be excepted from discharge under § 523(a)(15), it cannot be a domestic support obligation. Furthermore, a debt that is excepted from discharge by § 523(a)(15) is not entitled to the same favorable treatment as a domestic support obligation. A debt excepted from discharge under § 523(a)(15) is not a priority claim. 11 U.S.C. § 507(a)(1). Likewise, § 1325(a)(8) does not prevent confirmation when the debtor is behind in payments. 11 U.S.C. § 1325(a)(8). No other statutes require a chapter 13 plan to treat a debt excepted from discharge under § 523(a)(15) more favorably than other debts. *In re Knox*, 2007 WL 1541957 (Bankr. E. D. Tenn. May 23, 2007) (Judge Cook).

Ms. Jackson also objected to confirmation on the ground that the plan does not provide for full payment of the debt to her. This could have been intended as part of the main argument that the plan must provide for full payment of the debt to Green Tree as a domestic support obligation.

On the other hand, this part of the objection form can be used to make an objection under the disposable income test of § 1325(b). 11 U.S.C. § 1325(b). The typed addition to this objection states that Form B22C is miscalculated in lines 33, 34, and 47(b). Form B22C is used to calculate a debtor's disposable income

Line 47(b) deals with the calculation of average monthly payments on secured debts. It includes a monthly payment on the secured debt to Green Tree even though the proposed plan called for surrender of the mobile home and no payments to Green Tree as a secured creditor. The chapter 13 trustee objected to confirmation on the ground that including the monthly payment to Green Tree caused an unallowable reduction in projected disposable income. Since the court sustained the trustee's objection, the court need not consider the same objection by Ms. Jackson, if she intended any such objection.

The typed explanation was probably intended to argue that the payments to Green Tree should have been included on line 33 of Form B22C instead of line 47(b). Line 33 asked the debtor to list the expense of court ordered payments, such as spousal or child support payments, but not including past due support obligations. The debtor listed only the child support ordered by the divorce decree.

The purpose of the reference to line 34 of Form B22C is less clear. Line 34 asked the debtor to list expenses of education necessary for employment and expenses of education required for a physically or mentally challenged dependent child for whom no public education providing similar services is available. The form shows $200 per month. The amount is not explained in the schedules and statements filed by the debtor in his chapter 13 case. The reference

to line 34 seems to be purely an argument that the form understates the debtor's disposable income by including an unnecessary expense.

Ms. Jackson also objected to confirmation on the ground that the proposed plan is not feasible. This is followed by the typed explanation: "Schedule J improperly includes school supplies/lunches and fails to itemize wife's expenses of $1500.00." There are at least two kinds of feasibility objections. One raises the question of whether the chapter 13 debtor will be able to make the proposed plan payments and otherwise comply with the plan. 11 U.S.C. § 1325(a)(6). The typed statement suggests just the opposite, that the debtor can pay more than proposed. The feasibility objection in the form is often used for another kind of feasibility objection – an assertion that the proposed payments are too small for the debtor to complete the plan in the time allowed by the statutes. 11 U.S.C. §§ 1322(d) & 1325(a)(1). The typed statement does not easily relate to this kind of objection.

The typed statement may amount to an assertion that (1) the debtor's payments to the trustee must be larger to make the plan feasible because it must provide for full payment of the debt to Green Tree, and (2) a correct calculation of the debtor's disposable income will show that he is able to pay the larger amount.

In this regard, courts have looked to Schedules I and J when deciding whether the amount shown by Form B22C accurately predicts the debtor's *projected* disposable income. *See In re Upton*, 363 B.R. 528 (Bankr. S. D. Ohio 2007); *In re Edmunds*, 350 B.R. 636 (Bankr. D. S. C. 2006); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006).

Thus, Ms. Jackson's objection also alleges that the plan does not provide for use of all the debtor's disposable income. Since the court has already sustained the chapter 13 trustee's disposable income objection, the debtor will be allowed an opportunity to file an amended plan and any amended plan will be set for a meeting of creditors. At the new meeting of creditors, the interested parties can deal with amendments to schedules I and J filed by the debtor after the

objections were filed. The parties can also deal with the expenses that are allegedly overstated in Form B22C and schedule J. At this point in the plan confirmation process, the court need not deal with the disposable income objection by Ms. Jackson.

# # #